UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

MARTIN LANE HISTORIC AMERICANA,

Plaintiff,

-against-

WILLIAM EBY,

Defendant.

---------------------------------------------------------------------X

Case No.:07-CV-8496

HON. JUDGE STEIN

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE,** that upon the annexed Affidavit of WILLIAM EBY, the exhibits annexed thereto, the accompanying Memorandum of Law, and the pleadings and proceedings previously had herein, the Defendant, WILLIAM EBY, will move this court, at the United States Courthouse located at 500 Pearl Street New York, NY 10007-1312, on a date to be determined by the Court, at 9:30 a.m. that day or soon thereafter as counsel may be heard, for an Order Pursuant to Rule 12(b)(6) and Rule 11 of the Federal Rules of Civil Procedure granting the Defendant's motion to dismiss Plaintiff's Complaint, imposing sanctions upon the Plaintiff and his attorney and for such other relief as this Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE,** that answering affidavits, papers and memoranda, if any, are to be served upon the undersigned in accordance with the Federal Rules of Civil Procedure and Local Rule 6.1.

Dated: Garden City, New York
November 19, 2007

Arnold L. Kert, PLLC
Attorneys for Defendant, William Eby
By: Arnold L. Kert (ALK 3106)
666 Old Country Road, Suite 301
Garden City, New York 11530
(516) 222-1860

TO:   BOCHETTO & LENTZ, P.C.
      Attorneys for Plaintiff
      1524 Locust Street
      Philadelphia, PA 11788
      (215) 735-3900

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

MARTIN LANE HISTORIC AMERICANA,

Plaintiff,

-against-

WILLIAM EBY,

Defendant.

-----------------------------------------------------------------X

Case No.:07-CV-8496

HON. JUDGE STEIN

**AFFIDAVIT OF WILLIAM EBY**

STATE OF MARYLAND )
) SS:
COUNTY OF FREDERICK )

I, WILLIAM EBY, being duly sworn, depose and say:

1. I am the Defendant in the above-captioned action. As such, I am fully familiar with the facts and circumstances heretofore had herein.

2. This Affidavit is respectfully submitted in support of the within motion seeking an Order pursuant to Rule 12(b)(6) and Rule 11 of the Federal Rules of Civil Procedure dismissing the Plaintiff's Complaint, imposing sanctions on the Plaintiff and his attorney and for such other and further relief as this court deems just and proper.

3. The pertinent facts of this case are as follows: On December 28, 1997, I entered into a consignment agreement with Larry Wilson (hereinafter "Wilson"), a dealer in antique firearms. Pursuant to said agreement, a copy of which is annexed hereto as Exhibit "A," Wilson was to sell a Colt Texas or Holster Model Paterson revolver, belonging to myself, for an agreed upon price of five-hundred thousand ($500,000.00) dollars.

4. Wilson did successfully procure the sale of my Colt firearm for a price of five-hundred thousand ($500,000.00) dollars. However, as of November 23, 1999, one-hundred ninety-two thousand ($192,000.00) dollars of the purchase price had still not been remitted to

me. Accordingly, I filed a lawsuit against Wilson in the United States District Court, District of Connecticut, to recover the outstanding balance and obtained a judgment for the sum demanded.

5. In late December of 1999, Mr. Wilson offered to satisfy the judgment by providing me with an assortment of antique firearms, which were located at the Plaintiff, Martin Lane's (hereinafter "Lane") New York City gallery.

6. Thereafter, on the morning of January 14, 2000, both Wilson and I drove to Lane's New York gallery, where the three of us earmarked a collection of firearms, a written inventory of which is annexed hereto as Exhibit "B". At this meeting, Wilson and Lane gave me the items listed in Exhibit "B" and executed a signed agreement, a copy of which is annexed hereto as Exhibit "C," wherein all parties acknowledged that ownership of the aforementioned inventory of firearms was being transferred to me in satisfaction of a judgment and debt due and owing. It is these firearms that are the subject matter of the current litigation.

8. Subsequently, on March 31, 2000, Lane again acknowledged me as being the owner of the subject firearms when he executed a consignment agreement, a copy of which is annexed hereto as Exhibit "D," in an attempt to sell some of the items listed in Exhibit "B" on my behalf. Unable to secure a buyer, on July 27, 2007, Lane returned the consigned firearms to me. It is important to note that the firearms listed in the January 14, 2000 inventory are some of the same firearms listed in Exhibit "D," the consignment agreement.

9. The Plaintiff's Complaint, a copy of which is annexed hereto as Exhibit "E", alleges, breach of contract and unjust enrichment and seeks replevin of the collection of firearms, ownership of which was transferred to me on January 14, 2000.

10. As more fully discussed in the accompanying Memorandum of Law, Plaintiff's Complaint must be dismissed in its entirety on grounds that all claims asserted therein are barred

by the applicable statutes of limitations, and Plaintiff cannot otherwise prove any facts in support of his claims such that would entitle him to relief.

11. Also, as more fully discussed in the accompanying Memorandum of Law, Plaintiff's claims are frivolous and exemplify the type of dishonest business transactions in which the Plaintiff has been involved in the past. See article annexed hereto as Exhibit "F".

**WHEREFORE**, it is respectfully requested that this Court grant the within application in its entirety, and dismiss the Plaintiff's Complaint against the Defendant, William Eby, with prejudice, and for such other and further relief as this Court deems just and proper.

William Eby

**William Eby**

Sworn to before me this
16 day of Nov, 2007

Judy Johnson
Notary Public
My Commission Expires
8-15-2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MARTIN LANE HISTORIC AMERICANA

Plaintiff,

Case No.: 07-CV-8496

HON. JUDGE STEIN

-against-

WILLIAM EBY,

Defendant.
----------------------------------------------------------------------X

**DEFENDANT WILLIAM EBY'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION PURSUANT TO RULE 12(b)(6) AND RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE.**

Arnold L. Kert, PLLC
Attorneys for Defendant
William Eby
666 Old Country Road
Garden City, New York 11530

# TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-12

I. STANDARD FOR RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . 2

II. ALL CLAIMS ASSERTED AGAINST EBY MUST BE DISMISSED ON GROUNDS THAT PLAINTIFF CAN PROVE NO SET OF FACTS WHICH WOULD ENTITLE HIM TO THE RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-4

A. The Replevin Cause Of Action Must Be Dismissed On Grounds That Plaintiff Lacks Superior Right To Possession Of The Subject Chattels And Because This Action Is Barred By The Statute Of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B. The Unjust Enrichment Claim Must Be Dismissed On Grounds That It Is Barred By The Statute Of Limitations And The Defendant Gave Valuable Consideration For The Chattels That Form The Basis Of This Litigation . . . . . . . . . . . . . . . . . . . 7-9

C. The Breach Of Contract Cause Of Action Must Be Dismissed On Grounds That It Is Barred By The Statute Of Limitations And The Defendant Fully Performed As Contemplated By The Alleged Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II. SANCTIONS MUST BE IMPOSED ON GROUNDS THAT PLAINTIFF AND HIS ATTORNEY UNREASONABLY FAILED TO ACKNOWLEDGE THAT ALL CLAIMS ASSERTED IN THE COMPLAINT ARE TIME BARRED AND OTHERWISE LACK EVIDENTIARY SUPPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
MARTIN LANE HISTORIC AMERICANA

Case No.: 07-CV-8496

Plaintiff,

-against-

WILLIAM EBY,

Defendant.
---------------------------------------------------------------------X

**PRELIMINARY STATEMENT**

The Defendant, William Eby (hereinafter "Eby") by his attorneys, Arnold L. Kert, PLLC, submits the within Memorandum of Law in support of his motion pursuant to Rule 12(b)(6) and Rule 11 of the Federal Rules of Civil Procedure, seeking an order both dismissing the Plaintiff's Complaint imposing sanctions on the Plaintiff and his attorney.

**STATEMENT OF FACTS**

In the interests of judicial economy, the facts relevant to this motion are set forth in the annexed Affidavit of William Eby, which is incorporated herein, and to which the Court's attention is respectfully directed.

**LEGAL ARGUMENT**

**POINT I**

**STANDARD FOR RELIEF REQUESTED**

The standard for granting a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) was summarized in Jones v. Gonzalez, 2007 U.S. Dist. LEXIS 19151 (D.N.Y. 2007), wherein the Court stated the following:

> In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all of the factual allegations of the complaint as true and must draw all reasonable inferences in the plaintiff's favor. A court may not dismiss a complaint unless it appears beyond doubt...that the plaintiff can prove no set of facts which would entitle the plaintiff to relief. In deciding a Rule 12(b)(6) motion, a court's consideration is limited to the factual allegations in the plaintiff's pleading. [I]f other material is presented to and not excluded by the court, the motion shall be treated as one for summary judgment....[H]owever, affirmative defenses, such as statute of limitations claims, may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment, if the defense appears on the face of the complaint.

For the reasons stated below, the Plaintiff has failed to, and is unable to, state a claim upon which relief can be granted. Accordingly, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff's Complaint must be dismissed in its entirety.

The imposition of sanctions for filing a frivolous lawsuit is governed by Rule 11 of the Federal Rules of Civil Procedure, which states in relevant part:

> (b) **Representations to the Court**. By presenting to the court...a pleading, written motion, or other paper, an attorney...is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...
>
> **(c) Sanctions**. If...the court determines that subdivision (b) has been violated, the court may...impose appropriate sanctions upon the attorneys, law firms or parties that have violated subdivision (b)...

In the instant matter the conduct of the Plaintiff and Plaintiff's counsel is sanctionable for numerous reasons. First and foremost, all of the claims and facts asserted in the Complaint are devoid of any evidentiary support. Secondly, the causes of action asserted in the Complaint are not warranted by existing law as they are clearly barred by the statute of limitations.

## POINT II

## ALL CLAIMS ASSERTED AGAINST EBY MUST BE DISMISSED ON THE GROUNDS THAT PLAINTIFF CAN PROVE NO SET OF FACTS WHICH WOULD ENTITLE HIM TO THE RELIEF REQUESTED.

### A. The Replevin Cause Of Action Must Be Dismissed On Grounds That Plaintiff Lacks Superior Right To Possession Of The Subject Chattels And Because This Action Is Barred By The Statute Of Limitations.

As a first cause of action, the Plaintiff seeks replevin of certain antique firearms which the Complaint alleges were sold to the Defendant pursuant to an agreement among the parties. This claim must be dismissed on grounds that at all times mentioned in the Complaint, the Defendant was and still is the titled owner of the chattels mentioned therein, and is entitled to their possession.

An action to recover a chattel lies only where a plaintiff has a right to possession of the chattel superior to that of the defendant at the time the action is begun. Dubied Mach. Co. v. Vermont Knitting Co., 739 F. Supp. 867 (S.D.N.Y. 1990); Jamison Business Sys. v. Unique Software Corp., No. CV 02-2887 (ETB), 2005 WL 1262095 (E.D.N.Y. May 26, 2005). In connection with a contract for the sale of goods, unless the parties agree otherwise, title passes to the buyer at the time and place where the seller completes his performance with respect to the delivery of goods. N.Y. U.C.C. §2-401 (Consol. 2007). Accordingly, at the time the seller delivers the goods to the buyer, seller no longer has immediate right to possession and has no standing to assert a claim for replevin. See Hyman-Michaels Co. V. Senior and Palmer, Inc., 256

N.Y. 266, 192 N.E. 407 (1934) (indicating, that where title has vested and remains in the buyer, the seller cannot prevail on a claim for replevin).

In support of the claim for replevin, Plaintiff's Complaint cites Jamison Business Sys. v. Unique Software Corp., 2005 U.S. Dist. LEXIS 45480 (D.N.Y. 2005). While the plaintiff in the aforementioned case did successfully assert a replevin claim, a review of the aforementioned case reveals that it is completely distinguishable from the instant litigation. In *Jamison Business Systems v. Unique Software Corp.*, the plaintiff, a computer software development firm, developed and owned the copyright to certain software that was the subject of the replevin action. Jamison Bus. Systems, 2005 U.S. Dist. LEXIS 45480 at 4-6. During the time that the plaintiff owned the copyright to the software, the defendant misappropriated the software and made an unauthorized sale of that software to a third party. Id. at 4-6. In that case, it is clear that the plaintiff never transferred ownership to the defendant nor did the plaintiff authorize the defendant to make the sale. Accordingly, at all times in the aforementioned case, the plaintiff had superior right to possession of the software.

In stark contrast to *Jamison Business Systems v. Unique Software Corp.*, the instant Complaint is absent any facts tending to demonstrate the Plaintiff's superior right to the subject chattels. Rather, the facts, as pleaded in the Complaint, illustrate that at the time this action was commenced the Defendant had superior right to possession of the subject chattels. The Complaint alleges that on or about January 14, 2000, pursuant to an agreement entered into on the same day, Plaintiff sold and delivered certain antique firearms to the Defendant.[1] Accordingly, absent an agreement to the contrary, U.C.C. §2-401 indicates that title to the goods in question vested in the Defendant on or about January 14, 2000. Following delivery, the

[1] See Exhibit "D".

Defendant retained title to the guns and the transfer of ownership was acknowledged by the Plaintiff in writing.[2]

Accordingly, this claim must be dismissed because the factual allegations, even if accepted as true, demonstrate that at the time this action was commenced, the current Plaintiff did not own, nor was he entitled to immediate possession of the subject chattels.

Furthermore, this claim must be dismissed on grounds that it is barred by the statute of limitations. An action for recovery of chattel or for damages resulting from the taking or detaining of chattel is governed by a three year statute of limitations. N.Y. C.P.L.R. 214 (Consol. 2007). Where property has been wrongfully acquired, and replevin is being sought from the person who initially took wrongful possession, there is no requirement of a demand and refusal before a cause of action is established and the statute of limitations begins to run. Guggenheim Foundation v. Lubell 77 N.Y. 2d 311, 567 N.Y.S. 2d 623 (N.Y. 1991). Rather, the cause of action accrues and the statute of limitations begins to run at the time of the conversion of the property. Guggenheim Foundation, 567 N.Y.S. 2d 623 (N.Y. 1991).

In the instant action, Plaintiff seeks the return of certain antique firearms which he alleges were wrongfully converted by the Defendant on or about January 14, 2000. Pursuant to aforementioned case law, and the facts as asserted in the Complaint, the alleged replevin cause of action would have accrued on or about January 14, 2000 and the statute of limitations would have commenced to run on the same date. Accordingly, for a replevin cause of action based on the foregoing transaction to be timely it would have had to be commenced on or about January 14, 2003. However, the instant action was not commenced until October 1, 2007.

Even if this Court were to hold that a refusal of a demand for the return of the subject firearms was required for the replevin cause of action to accrue, and that Plaintiff has three years

---

[2] See Exhibit "D".

from the time of the demand to commence an action for replevin, this claim should still be dismissed on the grounds that the Plaintiff waited an unreasonable amount of time to demand the return of the subject firearms. See Matter of Peters, 2006 NY Slip Op 6480, 7 (N.Y. App. Div. 2006) (indicating, the requirement to make a demand and receive a refusal before commencing a proceeding does not mean that the aggrieved party can, by delay in making his demand, extend indefinitely the period during which he is required to take action).

Pursuant to the facts as alleged in the Complaint, it is clear that while the Plaintiff knew that the subject chattels were in the Defendant's possession, he nonetheless waited nearly seven years before seeking replevin. Accordingly, as a result of the Plaintiff's unreasonable and untimely delay in making his demand for the return of the subject firearms, the Defendant will be unjustly prejudiced if the Plaintiff is permitted to proceed with this claim.

**B. The Unjust Enrichment Claim Must Be Dismissed On Grounds That It Is Barred By The Statute Of Limitations And The Defendant Gave Valuable Consideration For The Chattels That Form The Basis Of This Litigation.**

Plaintiff's second cause of action alleges unjust enrichment in connection with alleged non-payment for goods sold and delivered. This unjust enrichment claim must be dismissed on grounds that it is barred by a four-year statute of limitations.

Where a cause of action for unjust enrichment is based on non-payment for goods and constitutes the same allegations used to assert a claim for breach of contract, the unjust enrichment claim will be governed by a four year statute of limitations which accrues in coincidence with the breach of contract claim. Wuhu Import & Export Corp. v. Capstone Capital, LLC., 834 N.Y.S. 2d 129, 39 A.D. 3d 314 (App. Div. 1st Dept. 2007); Edward Herba Jr. et al v. Everett Chichester et al, 754 N.Y.S. 2d 695, 301 A.D. 2d 822 (App.Div. 3rd Dept. 2003).

In support of this cause of action, Plaintiff alleges that on or about January 14, 2000, Defendant took possession of certain antique firearms and that the Defendant retained the value of those firearms without remitting payment to the Plaintiff on or about the same day.[3] In his Complaint, Plaintiff alleges this same non-payment as the basis of his breach of contract cause of action.[4] Accordingly, the unjust enrichment claim is subject to a four year statute of limitations which commenced to run on or about January 14, 2000.

In order for this unjust enrichment claim to be timely it would have had to be commenced on or about January 14, 2004. However, the present action was not commenced until October 1, 2007. Therefore, based solely upon the facts as alleged in the Complaint, it is clear that this claim is barred by the statute of limitations and must be dismissed.

In addition to this claim being barred by the applicable statute of limitations, it must also be dismissed on grounds that the Plaintiff can prove no facts such that would entitle him to the relief requested.

Unjust enrichment rests upon the equitable principle that a person shall not be allowed to enrich himself at the expense of another. Saunders v. Kline, 55 A.D. 2d 887, 391 N.Y.S. 1 (App.Div. 1st Dept. 1977). An action for unjust enrichment lies where a defendant has been placed in possession of money or its equivalent under such circumstances that equity and good conscience mandate that he not retain it. Baratta v. Kozlowski, 94 A.D. 2d 454, N.Y.S. 2d 803 (App.Div. 2d Dept. 1983); Saunders v. Kline, 55 A.D. 2d 887, 391 N.Y.S. 1 (App.Div. 1st Dept. 1977).

In support of the claim for unjust enrichment, Plaintiff alleges that on or about January 14, 2000 he sold certain antique firearms to the Defendant and that no consideration was remitted

---

[3] See Complaint Para. 5 and 20.
[4] See Complaint Para. 20-22.

in return. Notwithstanding Plaintiff's allegations, there exists written documentary evidence in which the Plaintiff acknowledges that the subject firearms were in fact transferred to the Defendant in satisfaction of moneys owed to the Defendant.[5] Accordingly, this claim must be dismissed on grounds that Plaintiff can prove no facts tending to show that the Defendant was unjustly enriched.

**C. <u>The Breach Of Contract Cause Of Action Must Be Dismissed On Grounds That It Is Barred By The Statute Of Limitations And The Defendant Fully Performed As Contemplated By The Alleged Agreement.</u>**

Plaintiff's third cause of action alleges breach of contract in connection with a sale of goods. This claim must be dismissed on grounds that it is currently barred by a four-year statute of limitations.

An action for breach of contract in connection with a sale of goods must be commenced within four years of the accrual of the cause of action. N.Y. U.C.C. §2-725(1) (Consol. 2007). Such cause of cause of action accrues and the statute of limitations begins to run at the time that the breach occurs, regardless if the aggrieved party was unaware of the breach. N.Y. U.C.C. §2-725(2) (Consol. 2007). Furthermore, where an agreement concerning the sale of goods leaves open the time for payment to be rendered, the law prescribes that payment is due at the time and place that the buyer is to receive the goods. N.Y. U.C.C. §2-310 (Consol. 2007).

The Complaint alleges that on or about January 14, 2000, Plaintiff and Defendant entered into a contract for the sale of certain antique firearms, that the Defendant took possession of the firearms that day, and that no payment was ever remitted by Defendant.[6] The Complaint does not allege that a time for payment was ever established.

---

[5] See Exhibit "D".
[6] See Complaint Para. 20-22.

Given the aforementioned facts, the U.C.C. §2-310 default rule mandates that any alleged payment in connection with the transaction in question would have been due on or about January 14, 2000. Assuming the truth of the facts as pleaded in the Complaint, failure to tender payment would have constituted a breach on or about January 14, 2000 and the four year statute of limitations would have commenced to run on that same date.

Thus, pursuant to U.C.C. §2-725(2), for a breach of contract action based on the foregoing transaction to be timely, it would have had to be commenced on or about January 14, 2004. However, as the instant action was not commenced until October 1, 2007, Plaintiff's breach of contract claim must be dismissed on grounds that it is barred by the statute of limitations.

Alternatively, even if this Court were to apply the traditional six year statute of limitations as provided by N.Y. C.P.L.R. 213, Plaintiff's breach of contract claim, commenced on October 1, 2007, would still be untimely. Given that the alleged breach occurred on or about January 14, 2000, to be timely under a six year statute of limitations, Plaintiff would have had to commence this action on or about January 14, 2006.

In addition to this claim being barred by the statute of limitations, it must be dismissed on grounds that the Plaintiff can prove no set of facts such as would entitle him to the relief requested. Notwithstanding the Plaintiff's allegations, the subject firearms were transferred to the Defendant pursuant to a written agreement in which the Plaintiff expressly acknowledged the exchange of valuable consideration.[7] Furthermore, the contract alleged by the Plaintiff, a written copy of which is attached hereto as Exhibit "D", contemplates no further payment to be remitted by the Defendant as consideration for the subject firearms.

---

[7] See Exhibit "D".

## POINT III

## SANCTIONS MUST BE IMPOSED ON GROUNDS THAT THE PLAINTIFF AND HIS ATTORNEY UNREASONABLY FAILED TO ACKNOWLEGE THAT ALL CLAIMS ASSERTED IN THE COMPLAINT ARE TIME BARRED AND OTHERWISE LACK EVIDENTIARY SUPPORT.

Rule 11 of the Federal Rules of Civil Procedure creates an affirmative duty for an attorney to make a pre-filing inquiry to establish reasonable ground to believe that further investigation and discovery will prove his case. Calka v. Kucker, Kraus & Bruh, LLP., 1998 U.S. Dist. LEXIS 11868 (D.N.Y. 1998). An attorney's pre-filing inquiry is assessed on an objective standard of reasonableness. Calka v. Kucker, Kraus & Bruh, LLP., 1998 U.S. Dist. LEXIS 11868 at 12. Conduct falls below the aforementioned standard and sanctions are required to be imposed where, based on the facts and existing precedent, it is clear that an action is destined to fail, and where no reasonable argument can be advanced to change or extend the prevailing law. Harkness Apartment Owners Corp. v. FDIC, 1993 U.S. Dist. LEXIS 10499 (D.N.Y. 1993).

In the instant matter, it can only be concluded that Plaintiff's attorney failed to do a reasonable pre-filing inquiry so as to determine if there was any evidentiary support for the claims asserted. In fact, at the time this action was commenced, there existed readily available documentation, a cursory review of which would have put both the Plaintiff and his attorney on notice that the claims asserted in the Complaint were unquestionably without merit. Furthermore, based simply on the dates as alleged in the Complaint, it should have been blatantly obvious to Plaintiff's attorney that even if there was evidentiary support for the asserted claims, they were nonetheless barred by the statute of limitations. Despite the claims being blatantly time barred, there is no reasonable argument, nor has Plaintiff set forth any argument for the extension or tolling of the statute of limitations.

Therefore, if this Court concludes that Plaintiff's claims are barred by the statute of limitations and that Plaintiff has failed to state a claim for which relief may be granted, this Court should also conclude that the instant lawsuit was frivolously filed in violation of FED. R. CIV. P. 11 and that the imposition of sanctions is appropriate.

**CONCLUSION**

For all the aforementioned reasons, it is respectfully submitted that the relief sought by Defendant, William Eby, should be granted in its entirety, and Plaintiff's Complaint dismissed.

Dated: Garden City, New York
November 19, 2007

Respectfully submitted,

Arnold L. Kert, PLLC
Attorneys for Defendant
William Eby
By: Arnold L. Kert (ALK 3106)
666 Old Country Road, Suite 301
Garden City, New York 11530

**EXHIBIT 'A'**

*R.L. Wilson*

**Castle View**
**103-4 Ferry Road, Route 148**
**Hadlyme, Connecticut 06439**
**Tel: (860) 526-9297**
**Fax: (860) 526-9514**

**Telegraph Hill Tower**
**1730 Kearny Street, G-1**
**San Francisco, California 94133**
**Tel: (415) 835-5999 Fax: 5998**

**Historical Consultant**
**Colt's Manufacturing Co., Hartford**
**and to**
**'The Art of American Arms'**
**and**
**'Buffalo Bill's Wild West'**
**Museum Loan Exhibitions**
**'Son of a Gun' - BBC-TV**
**'Colt Firearms Legends' - SONY**
**'The Guns That Tamed the West' - A & E**
**'The Story of the Gun' - A & E**
**'The Gun Industry in America' - BBC-TV/Open University**
**'Buffalo Bill's Wild West' - Riva Productions**
**Chairman, Antique Arms Committee**
**U.S. Society of Arms and Armour/America Remembers**
**The Guns of Manhattan (1999)**

**Samuel Colt Presents**
**The Arms Collection of Colonel Colt**
**L.D. Nimschke Firearms Engraver**
**The Evolution of the Colt**
**The Rampant Colt**
**Colt Commemorative Firearms**
**Theodore Roosevelt Outdoorsman**
**The Book of Colt Firearms**
**The Book of Winchester Engraving**
**Antique Arms Annual**
**Colt Pistols (with R.E. Hable)**
**Paterson Colt Pistol Variations (with P.R. Phillips)**
**The Colt Heritage**
**The "Russian" Colts**
**Colt Engraving**
**Rare and Historic Firearms (Christie's)**
**Winchester 1 of 1000**
**Colt's Dates of Manufacture**
**The Deringer in America, 2 Volumes (with L.D. Eberhart)**
**Colt An American Legend**
**Rare Firearms - A Benefit Auction (Christie's)**
**Winchester An American Legend**
**The Peacemakers**
**Steel Canvas**
**Ruger & His Guns**
**The Colt Engraving Book**
**The Official Price Guide to Gun Collecting**

***From Connecticut address***

December 28th 1997

Wm. T. Eby
7506 Hopkins Avenue
College Park, Maryland 20740
(301) 927-2181

Dear Mr. Eby:

This document is a receipt for the following item, left on consignment from yourself to me this date, for a period of up to approximately 120 days, on the basis as spelled out below:

> Colt Texas or Holster Model Paterson revolver, serial no. 141, with 9-inch barrel (with customary *Colts Pt. Patent Arms Mfg. Co., Paterson, N.J.* barrel address marking and German silver band inlays, as also on recoil shield; oval escutcheon motif inlaid on backstrap; stagecoach holdup scene on roll-engraved cylinder); in overall excellent condition, blued, with case-hardened hammer and varnished select walnut grips; with

accessories of a mahogany case (lined in brown velvet; breakage to lock and missing brass and steel lock mechanism), combination powder and ball flask (marked with inscription legend as on revolver barrel, around center band, and with serial no. 16), combination screwdriver/nipplewrench/loading lever/nipple pricker, walnut-handled bullet mold, cleaning rod with turned walnut handle, extra cylinder (square-backed, and marked with serial no. 110, and with roll-engraved cylinder scene), Paterson capper (large size for revolving rifle, marked no. 40), and nipple wrench (with faceted wooden handle, made for engaging Paterson four-pronged nipples), and extra Paterson-style trigger (marked no. 391).

Consigned for sale at 13% commission to seller from gross ~~sale~~ price; minimum gross price of $500,000, of which approx. $150,000 to ~~$200,000~~ value to be trade of a Texas or Holster Model Paterson revolver in very good condition (7 1/2-inch barrel, with visible cylinder scene). It is understood that a better price than the above would warrant a better commission figure. The decision to sell at the final price is at the disgression of the seller.

N.B.- Was Amended to 150,000

R.L. Wilson

Dec 28.1997

# EXHIBIT 'B'

Total ~~\#~~ 103,000

1 Box of Winchester Cart. (44)

1 Pennpacker American flint Rifle with Silver inlays

1 Cased pair of Belgian Smith pistols in Sequential number

1 Frank Elliot Bowie Knife

1 Powder horn

RW 1 Kermit Roosevelt's Rifle Bolt Action Springfield Armoury Rifle

RW 1 Single Action Colt ____ Well's Fargo !!

NEW NUMBERS!!

1 Richards Conversion 44 Caliber Revolver 12 notch ~~7500~~ (5,200)

1 Buffalo Bill & Sitting Bull Photograph mounted

1 Colt Art. Model 132637 ~~10,000~~ (5,500)

ML 000283

1 Colt Single Action nickel plate No. 18162 ~~12,500~~ (7,500)

1 Colt Army 44 Experimental ivory grips, engraved No. 14772 ~~25,000~~ (12,900)

[signature] 1/14/00

3

Liner - 21,500 WTE

PKT 10,500 WTE

49 - 6" 16,500 WTE

49 5" 13,500 WTE

49 4" 11,500 WTE

Cor 6,800 WTE William Tday

60 fluted 8250 WTE

49 1, 99 75K 5,000 WTE

Fee Jan + 17.5K 93,750 9400

+ 55K

Feb 2 pymt 30

March 39

April 39

May 30, 2007 39

39

49 -- 60602 - 5,000

1860 FLUTED 3572 8250

??? New Numbers

# EXHIBIT 'C'

1/1[illegible]/200[illegible]

This Receipt in consideration of goods (antique firearms) and other valuables William Ely has received from a Mr. Martin Lane & Mr. Larry Wilson hereby promise to apply towards monies owed

Signed [signature]

[signature]

J. Willson

[signature]

# EXHIBIT 'D'

Martin J. Lane
[illegible] WEST HOUSTON STREET

on Consignment from
Mr. Bill Eby 3-31-2000

(1) Letter on 1860 Army Metallic Cart.
Engraved w/ Factory Ivory's
SN # 114721. Colt.
No Comission on Sale
(120 days Open Consignment)
$ ~~[illegible]~~ 25,000.00

(2) Cased Pair 1855 Nickle Plated
#1 Smith & Wesson Army's
120 day Consignment.
$10,000.00

Taken in By [signature]
3-31-2000 [signature]

Returned to
MR. EBY.
7.27.2000
in person [signature] [signature] 7/27/00

ML 000281

EXHIBIT "E"

AUTHORIZED SUBPOENA

003/012

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern District of New York

Martin Lane Historic Americana

V.

William Eby

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER:

07 CIV 8496

TO: (Name and address of Defendant)

William Eby
3481 Augusta Drive
Ijamsville, MD 21754-9040

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Gavin P. Lentz, Esquire
BOCHETTO & LENTZ, P.C.
1524 Locust Street
Philadelphia, PA 19102

an answer to the complaint which is served on you with this summons within 20 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**
CLERK

OCT 0 1 2007
DATE

(By) DEPUTY CLERK

800 236 2082 GUARANTEED SUBPOENA 005/012

JS 44C/SDNY
REV. 12/2005

JUDGE STEIN

CIVIL COVER SHEET **07 CIV 8496**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

PLAINTIFFS
Martin Lane Historic Americana
205 West Houston Street
New York, NY 10014

DEFENDANTS
William Eby
3461 Augusta Drive
Ijamsville, MD 21754-9040

ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER
Gavin P. Lentz, Esquire
1524 Locust Street, Philadelphia, PA 19102

ATTORNEYS (IF KNOWN)

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

DIVERSITY OF CITIZENSHIP 28 U.S.C § 1332

Has this or a similar case been previously filed in SDNY at any time? No [X] Yes? [ ] Judge Previously Assigned

If yes, was this case Vol. [ ] Invol. [ ] Dismissed. No [ ] Yes [ ] If yes, give date ________ & Case No. ________

(PLACE AN [x] IN ONE BOX ONLY)

NATURE OF SUIT

OCT 01 2007

**CONTRACT**

[ ] 110 INSURANCE
[ ] 120 MARINE
[ ] 130 MILLER ACT
[ ] 140 NEGOTIABLE INSTRUMENT
[ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT
[ ] 151 MEDICARE ACT
[ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS)
[ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS
[ ] 160 STOCKHOLDERS SUITS
[X] 190 OTHER CONTRACT
[ ] 195 CONTRACT PRODUCT LIABILITY
[ ] 196 FRANCHISE

**TORTS**

PERSONAL INJURY
[ ] 310 AIRPLANE
[ ] 315 AIRPLANE PRODUCT LIABILITY
[ ] 320 ASSAULT, LIBEL & SLANDER
[ ] 330 FEDERAL EMPLOYERS' LIABILITY
[ ] 340 MARINE
[ ] 345 MARINE PRODUCT LIABILITY
[ ] 350 MOTOR VEHICLE
[ ] 355 MOTOR VEHICLE PRODUCT LIABILITY
[ ] 360 OTHER PERSONAL INJURY

PERSONAL INJURY
[ ] 362 PERSONAL INJURY - MED MALPRACTICE
[ ] 365 PERSONAL INJURY PRODUCT LIABILITY
[ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY

PERSONAL PROPERTY
[ ] 370 OTHER FRAUD
[ ] 371 TRUTH IN LENDING
[ ] 380 OTHER PERSONAL PROPERTY DAMAGE
[ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY

**FORFEITURE/PENALTY**

[ ] 610 AGRICULTURE
[ ] 620 FOOD & DRUG
[ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881
[ ] 630 LIQUOR LAWS
[ ] 640 RR & TRUCK
[ ] 650 AIRLINE REGS
[ ] 660 OCCUPATIONAL SAFETY/HEALTH
[ ] 690 OTHER

LABOR
[ ] 710 FAIR LABOR STANDARDS ACT
[ ] 720 LABOR/MGMT RELATIONS
[ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT
[ ] 740 RAILWAY LABOR ACT
[ ] 790 OTHER LABOR LITIGATION
[ ] 791 EMPL RET INC SECURITY ACT

**ACTIONS UNDER STATUTES**

BANKRUPTCY
[ ] 422 APPEAL 28 USC 158
[ ] 423 WITHDRAWAL 28 USC 157

PROPERTY RIGHTS
[ ] 820 COPYRIGHTS
[ ] 830 PATENT
[ ] 840 TRADEMARK

SOCIAL SECURITY
[ ] 861 HIA (1395FF)
[ ] 862 BLACK LUNG (923)
[ ] 863 DIWC (405(g))
[ ] 863 DIWW (405(g))
[ ] 864 SSID TITLE XVI
[ ] 865 RSI (405(g))

FEDERAL TAX SUITS
[ ] 870 TAXES
[ ] 871 IRS-THIRD PARTY 20 USC 7609

OTHER STATUTES
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLUENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

**REAL PROPERTY**

[ ] 210 LAND CONDEMNATION
[ ] 220 FORECLOSURE
[ ] 230 RENT LEASE & EJECTMENT
[ ] 240 TORTS TO LAND
[ ] 245 TORT PRODUCT LIABILITY
[ ] 290 ALL OTHER REAL PROPERTY

**ACTIONS UNDER STATUTES**

CIVIL RIGHTS
[ ] 441 VOTING
[ ] 442 EMPLOYMENT
[ ] 443 HOUSING ACCOMMODATIONS
[ ] 444 WELFARE
[ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT
[ ] 446 AMERICANS WITH DISABILITIES -OTHER
[ ] 440 OTHER CIVIL RIGHTS

PRISONER PETITIONS
[ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255
[ ] 530 HABEAS CORPUS
[ ] 535 DEATH PENALTY
[ ] 540 MANDAMUS & OTHER
[ ] 550 CIVIL RIGHTS
[ ] 555 PRISON CONDITION

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ in excess of 200,000 OTHER ________

*Check YES only if demanded in complaint*
JURY DEMAND: [X] YES [ ] NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

JUDGE ________ DOCKET NUMBER ________

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

JUDGE STEIN

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

07 CIV 8496

MARTIN LANE HISTORIC AMERICANA
205 West Houston Street
New York, New York 10014,

Plaintiff,

vs.

WILLIAM EBY,
3481 Augusta Drive
Ijamsville, Maryland 21754-9040,

Defendant.

Civil Action No.

U.S.D.C. S.D. N.Y. CASHIERS

JURY TRIAL DEMANDED

## COMPLAINT

COMES NOW, Plaintiff Martin Lane Historic Americana ("MLHA"), by and through undersigned counsel, and for its Complaint against Defendant William Eby ("Mr. Eby") alleges as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1332 as the amount in controversy far exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.
2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to these claims occurred in this district.

## II. THE PARTIES

3. Plaintiff Martin Lane Historic Americana ("MLHA") is a New York corporation engaged in the collection and resale of rare antique firearms and other collectible artifacts doing business at its gallery located at 205 West Houston Street, New York, New York 10014.

retained items.

**COUNT I**
**(REPLEVIN)**

14. Plaintiff incorporates all prior paragraphs as if the same were set forth at length herein.

15. MLHA's possessory right to the aforementioned items is superior to that of Mr. Eby as they were never paid for as promised. MLHA is entitled to immediate possession of those items. *Jamison Business Sys.'s, Inc. v. Unique Software Support Corp.*, No. CV 02-4887 (ETB), 2005 WL 1262095, at *14 (E.D.N.Y. May 26, 2005).

16. MLHA has made repeated demand for return of the items but Mr. Eby continues to refuse to return the items despite MLHA's superior rights. *Id.*

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for an amount in excess of $200,000 plus any such other relief this Court deems equitable and just.

**COUNT II**
**(UNJUST ENRICHMENT)**

17. Plaintiff incorporates all prior paragraphs as if the same were set forth at length herein.

18. By continuing to retain the items that belong to Plaintiff and to which Plaintiff has a superior possessory right, Defendant is being enriched at Plaintiff's expense.

19. Equity and good conscience militate against permitting Defendant to retain the items that are unlawfully in his possession as MLHA was never paid as previously agreed.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for an amount in excess of $200,000 plus any such other relief this Court deems equitable and just.

Ther - 21,500 wts
PKT 10,500 wts
49 - 6" 16,500 wts
49 5" 13,500 wts.
49 4" 11,500 wts
Corr 6,800 wts
60 flute 8250 wts
[illegible] 1.11 7.50 5,000 wts
[illegible] 17.50 93,750 9400
+ 5.50
[illegible] — repaid 39
[illegible] 39
[illegible] 39
[illegible] 30. [illegible] 39
39

49 -- 60602 - 5,000
1860 Flute 3572 8250

EXHIBIT
A

EXHIBIT "F"



Smoking Gun - Forbes.com http://www.forbes.com/free_forbes/2006/1225/112.html

The Orange Savings Account
ING DIRECT
Save Your Money
Open Now
4.20% APY No Fees. No Minimums.
Member FDIC

Forbes .com
Search: Forbes.com Quotes Video Web Blogs Advanced

U.S. EUROPE ASIA HOME PAGE FOR THE WORLD'S BUSINESS LEADERS Free Trial Issue

ENTREPRENEURS
- Raise Capital
- Market Your Business
- Harness Technology

HOME BUSINESS TECH MARKETS ENTREPRENEURS LEADERSHIP PERSONAL FINANCE FORBESLIFE LISTS OP

Video Blogs E-mail Newsletters Org Chart Wiki People Tracker Portfolio Tracker Special Reports Widgets CEO Network

E-mail | Print | Comments | Request Reprints | E-Mail Newsletters | My Yahoo! | RSS

The 2007 Collectors Guide

# Smoking Gun

David Armstrong 12.25.06

The Collectors Guide

**The king of the antique firearms business, Larry Wilson, sits in prison. Is he a con artist--or did he just shoot himself in the foot?**

To his defenders, Robert L. (Larry) Wilson is the most prominent expert in collectible antique firearms, a scholar who pops up in the middle of almost every major transaction in the gun trade. "He's the king," says his friend, sometime business partner and New York antique dealer Martin Lane. "His research single-handedly made this hobby what it is. This stuff wouldn't be worth nearly what it is if it weren't for Wilson."

To his detractors Wilson is a con man, snookering the collecting elite and part-time hobbyist alike, artificially pumping up the value of old guns and working with a network of conniving dealers who profit off the inflated values. Sometimes, his accusers say, he simply steals guns outright. "At best, he's been abusive of his position; at worst, a total crook," says Jim Gordon, who serves on the board of the Buffalo Bill Historical Center in Cody, Wyo.

Whatever the case, Wilson, 67, sits in a federal penitentiary in Lompoc, Calif. He is serving a 12-month-and-one-day sentence after pleading guilty last year to cheating a California seller out of a $500,000 1840 Colt Paterson revolver that once belonged to the son of French King Louis-Philippe. He'll be released three days after Christmas; in March he will head to a juried trial in Louisville, Ky. to face criminal charges in a separate case, where he could get an additional 11 years. In an eight-page letter from prison, Wilson says he's innocent of all new charges, the victim of an overzealous attorney, jealous dealers and "wannabe" scholars who

Forbes — How To Be A Smart Collector

Hot Spots
The Artful Billionaire
Hey That's Mine
Patently Obvious
**Complete Contents**

**By This Author**
David Armstrong
Booked Up
From Player to Creator, Online
**More Headlines**
**RSS News Feed**

**News by E-mail**
**Get stories by E-Mail on this topic FREE**

**Companies**
Wells Fargo

Become a member FREE
Already a Member? Log in

Enter Username
Enter E-Mail Address
Select Your Title
Receive Special Offers?

FAQ | Privacy Policy
Terms, Conditions and Notices

**Also available:**
E-Mail Newsletters

Find Free Wi-Fi Hotspots

A little knowledg is a powerful thir

Alerts:
Be notified about payment due dates a low balances so you help prevent fees.
Know More Now

Bank of Americ

**Magazine Archives**
**Looking for a *Forbes* magazine article?**
Search here.
magazine archives powered by mywir
Search

**Trading Center**

1 of 5 11/8/2007 8:30 AM

resent his success and influence in the gun trade. "After my unprecedented contributions to the study of arms, to arms collecting," he writes, "my treatment ... is disgraceful."

Indeed, Wilson has had both success and influence. For more than four decades he has written more extensively about historical firearms in the U.S. than anyone else, producing 42 books, including the definitive history of Colt firearms and an exhaustive guide to Colt serial numbers and manufacturing dates, the bible for dealers and collectors. He's written many catalog essays and articles, has sat on the boards of the nation's major antique gun museums--and has been kicked off at least one. He has also been the go-to guy in documentaries on gun history for the Discovery, A&E and History channels. For collectors his acknowledgment of a gun's provenance and value was widely considered the last word. "For years I was educated by Larry. He knew everyone, all over the world," says New York financier Donald Zilkha, who bought Colt's Manufacturing Co. in 1994.

The son and grandson of Presbyterian ministers from Minnesota, Wilson developed a passion for antique guns matched only by a carefully cultivated image of the gentleman adventurer. His Hadlyme, Conn. home was filled with curiosities: a full-size replica **Wells Fargo** (nyse: WFC - news - people ) stagecoach in the middle of the living room, an 1893 roulette table and built-in vaults that held his own collection of rare firearms, and a vast trove of books. A stuffed boar and lion inhabited the place, along with hyena and baboon skulls, trophies from the nine expeditions Wilson made to Africa, accompanied by the likes of former Treasury Secretary William Simon and wealthy art dealer Alec Wildenstein. Wilson regularly attended, and participated in, the Mille Miglia, once driving a rare 1947 Cisitalia in the annual recreation of the famed Italian cross-country race from Brescia to Rome. "He was trapped in a society that he tried to keep up with, the world of the rich and famous, and he couldn't do it," says John Malloy, a collector who has known Wilson for at least 30 years.

To many who know him, Wilson is no crook, just a befuddled scholar--a freelance appraiser and author with little business acumen who got in over his head financially even as gun owners, relying on his expertise and connections, trusted him to act as a middleman in their deals. They say Wilson never really recovered after sinking as much as $500,000 into *In the Blood*, a feature-length movie in 1989, shot in Africa, re-creating Theodore Roosevelt's 1909--10 hunting expedition. Directed by *Pumping Iron* auteur George Butler, the film got good reviews--but no audience.

The deal that landed him in jail is vintage Wilson. In 1999 the owner of the Colt Paterson, a gun that once belonged to the Duke of Orléans, entrusted Wilson to find a buyer, for $500,000 in cash. Soon after, Wilson sold the gun through Lane to another collector for $250,000 and a handful of lesser-valued guns but repeatedly told the seller that he needed more time to close the deal, according to a lawsuit filed by Antiques & Arts Trading Consultants, the seller. The suit claims Wilson used the money to repay debts he owed Lane and others--including William Eby, with whom Wilson also had an earlier agreement to sell a different $500,000 Colt pistol--and to fund Wilson's "extravagant lifestyle." Wilson declared bankruptcy in January 2001. The seller later won a nondischargeable $750,000 claim against Wilson, the sum of what's due with interest and other fees, though it has received only $50,000.

Last year, Wilson says, the lawyers hounding him for the money got the U.S. district attorney in Connecticut involved, and Wilson--believing he wouldn't serve any time in jail, say people close to him--pleaded guilty to one count of wire fraud in connection with the case. In his letter Wilson admits there is "partial payment due" on the deal but says the federal case was pushed by the seller's lawyer in an attempt to use the federal government "as their bill collector."

In the wake of his bankruptcy Wilson's Connecticut home was auctioned off for $1 million. Other gun sellers turned up with similar stories about being stiffed--with more than $800,000 owed to Lane for previous deals;

Brought to you by the sponsor

AMERITRADE
$9.99 trades
No surprises

ForbesAutos.com

CEO Book Club

BOOK REVIEW
**Robert Lenzner**

BOOK REVIEW
**It's Value Time**
Robert Lenzner
With the Dow over 12,000, value investi back. *The Little Book of Value Investing* shows you how to take advantage.

**Search Books**
Title

Advanced Search

New & Notable



$250,000 to auction house Bonhams & Butterfields; $400,000 to a gun seller in Akron, Ohio; and $50,000 to a doctor in South Dakota. Joseph Imbrognio of Mechanicsburg, Pa. claims he engaged Wilson in 1999 or 2000 to sell a $40,000 Colt Walker that had been in his fiancée's family for 80 years, a gun believed to have been with the famed Texas Ranger, Samuel Walker, in Mexico. He never saw the gun (or the money) again." "I tell everyone who will listen that Wilson is a thief," he says.

Forbes
.com
Newsletters
Stay
Informed!

FORBES STOCK
MARKET COURSE
a marvelous gift for both
new and experienced invest
PURCHASE NOW
CLICK HERE
Special Advertising
Wine Club Go

The National Cowboy & Western Heritage Museum in Oklahoma City in 2000 gave Wilson 100 guns to sell. After his bankruptcy, only 37 were accounted for. Still the museum's curator Richard Rattenbury defends Wilson: "The situation with us was disappointing, but there's no doubt he's always been honest with me."

Suspicions about Wilson first surfaced in the late 1970s and early 1980s when he was working as a pro bono adviser to the Colt Firearms Collection at the Museum of Connecticut History. Wilson arranged a series of five trades with the museum, including one in which he swapped a double-barreled Colt rifle that he bought for $15,000 to the museum for nine other guns, six of which he soon sold for $44,000. In another trade Wilson gave seven guns worth $43,000 to the museum in return for 16 guns he would later value at $84,000.

After an 18-month investigation, then state attorney general Joseph Lieberman filed a report to Connecticut governor William O'Neill in 1988. Given the wide-ranging values by different appraisers of items moving in and out of the museum, Lieberman could not prove that a crime had been committed. Wilson says his profits were the result of "dumb luck" and "a typical markup" over the years since he owned the guns. Current museum president Dean Nelson tracked the guns in later deals and is convinced Wilson profited handsomely. In 2004, he says, the fbi in Louisville, Ky. asked for those records.

None of this, apparently, was known to Owsley Brown Frazier when he started to build a vast gun collection in 1997. The 71-year-old former vice chairman of Brown-Forman, makers of Jack Daniel's whiskey, among other brands, turned first to Michael Salisbury, a relative unknown in gun collecting circles who had met Frazier through a mutual friend. For the next five years Salisbury, acting on Frazier's behalf, bought hundreds of guns, including 19th-century Colts and Winchesters. In late 2000 Salisbury tapped Wilson to appraise the budding collection. Wilson flew to Louisville, met Frazier and was quickly brought into the fold. Frazier had 46 guns at the time, and Wilson signed off on a $5.5 million appraisal, almost twice what Frazier had paid.

By the middle of 2001 Frazier was committed to the idea of building a gun museum and charged Salisbury with building a "world class" collection. Court documents say Salisbury bought more than 400 guns in 16 months. Meanwhile, Wilson made many trips to Louisville to advise on acquisitions and plans for the museum. He introduced Frazier to the head of the British Royal Armories--the U.K. museum dedicated to arms and armor; now, thanks to Wilson, the third floor of Frazier's museum contains the Royal Armories' only U.S. outpost. He persuaded Frazier to spend $300,000 to support research on a history of women and firearms, *Silk and Steel* (Random House, 2003).

**Page: 1** 2 Next >

**More On This Topic**
**Companies:** WFC
**E-Mail Newsletters:** Sign Up Now To Stay Informed On A Range Of Topics
**Attaché:** Customize Forbes.com Now To Track This Author And Industry

**Article Controls**
E-mail | Print | Comments | Request Reprints | E-Mail Newsletters | My Yahoo! | RSS

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK )
: ss.:
COUNTY OF NASSAU )

I, KARLEEN TISCHLER, being duly sworn, states as follows: I am employed in the County of Nassau, State of New York by Arnold L. Kert PLLC. I am over 18 years of age and not a party to the action. My business address is 666 Old Country Road, Garden City, New York 11530.

On November 19, 2007 I served the following documents:

NOTICE OF MOTION PURSUANT TO RULE 12 (B)(6) AND RULE 11 OF THE FRCP TO DISMISS PLAINTIFF'S COMPLAINT

by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to:

Gavin P. Lentz, Esq.
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19102

Karleen Tischler

KARLEEN TISCHLER

Sworn to before me this
19th day of November, 2007.

Sandra R. Cohen

Notary Public

SANDRA R. COHEN
Notary Public, State of New York
No. 52-4505353
Qualified in Suffolk County
Commission Expires May 31, 2011

*Case No.:* 07-CV-8496

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN LANE HISTORIC AMERICANA,

Plaintiffs,

-against-

WILLIAM EBY,

Defendants.

NOTICE OF MOTION

ARNOLD L. KERT PLLC
ATTORNEY AT LAW
ATTORNEYS FOR DEFENDANT
666 OLD COUNTRY ROAD, SUITE 301
GARDEN CITY, NEW YORK 11530
TEL: (516) 222-1860 - FAX: (516) 222-1713

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*

*Dated:*_______________ *Signature:*_______________
*Print Signer's Name:* ARNOLD L. KERT

*Service of a copy of the within* *is hereby admitted*
*Dated:*
_______________
*Attorney(s) for*

PLEASE TAKE NOTICE

Notice of Entry

( ) that the within is a certified copy of a entered in the office of the clerk of the within named Court on

Notice of Settlement

( ) that an Order of which the within is a true copy will be presented for settlement to the Hon. one of the judges of the within named Court, at
on 20 , at

*Dated:*

ARNOLD L. KERT PLLC
666 OLD COUNTRY ROAD
GARDEN CITY, NEW YORK 11530
Tel: (516) 222-1860