**EXHIBIT "A"**



07 CIV 8496

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MARTIN LANE HISTORIC AMERICANA** )<br>205 West Houston Street )<br>New York, New York 10014, )<br> )<br>  Plaintiff, )<br> )<br>  vs. )<br> )<br>**WILLIAM EBY,** )<br>3481 Augusta Drive )<br>Ijamsville, Maryland 21754-9040, )<br> )<br>  Defendant. ) | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiff Martin Lane Historic Americana ("MLHA"), by and through undersigned counsel, and for its Complaint against Defendant William Eby ("Mr. Eby") alleges as follows:

### I.  JURISDICTION AND VENUE

1. This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1332 as the amount in controversy far exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to these claims occurred in this district.

### II.  THE PARTIES

3. Plaintiff Martin Lane Historic Americana ("MLHA") is a New York corporation engaged in the collection and resale of rare antique firearms and other collectible artifacts doing business at its gallery located at 205 West Houston Street, New York, New York 10014.

1

Martin Lane ("Mr. Lane") is the owner and proprietor of MLHA.

4.  Defendant William Eby ("Mr. Eby") is an adult individual residing at 3481 Augusta Drive, Ijamsville, Maryland 21754-9040.

### III. FACTS

5.  On or about January 14, 2000, Mr. Eby appeared at MLHA's New York gallery and removed certain valuable artifacts and firearms from the premises. Payment for such items was never made despite promises to the contrary.

6.  At the present time, the fair market value of the items removed exceeds $200,000.

7.  At the time of removal, Mr. Eby promised Mr. Lane that MLHA would be paid for all of the items he removed by a third-party on behalf of Mr. Eby.

8.  Mr. Eby and Mr. Lane agreed to the value that MLHA would be paid for the artifacts and firearms. (A true and correct copy of a list of the parties agreed upon values for the items is "Exhibit A" hereto.)

9.  In reliance upon Mr. Eby's promises and representations regarding payment for the items being tendered by a third-party on Mr. Eby's behalf, Mr. Lane allowed Mr. Eby to remove the items listed in Exhibit "A" from MLHA's gallery.

10. To date, neither Mr. Eby nor the third-party has tendered payment for the items removed from MLHA's New York gallery.

11. MLHA has made repeated requests both orally and in writing for return of these items.

12. As recently as May 16, 2007, Mr. Lane, through counsel, has made written demand for return of these items but the items have still not been returned.

13. Mr. Eby's continued possession of these items despite his knowing that they were never paid for is unlawful and adverse to MLHA's right title and interest in the improperly

retained items.

## COUNT I
## (REPLEVIN)

14. Plaintiff incorporates all prior paragraphs as if the same were set forth at length herein.

15. MLHA's possessory right to the aforementioned items is superior to that of Mr. Eby as

   they were never paid for as promised.  MLHA is entitled to immediate possession of

   those items. *Jamison Business Sys.'s, Inc. v. Unique Software Support Corp.*, No. CV

   02-4887 (ETB), 2005 WL 1262095, at *14 (E.D.N.Y. May 26, 2005).

16. MLHA has made repeated demand for return of the items but Mr. Eby continues to refuse

   to return the items despite MLHA's superior rights.  *Id.*

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for an amount

in excess of $200,000 plus any such other relief this Court deems equitable and just.

## COUNT II
## (UNJUST ENRICHMENT)

17. Plaintiff incorporates all prior paragraphs as if the same were set forth at length herein.

18. By continuing to retain the items that belong to Plaintiff and to which Plaintiff has a

   superior possessory right, Defendant is being enriched at Plaintiff's expense.

19. Equity and good conscience militate against permitting Defendant to retain the items that

   are unlawfully in his possession as MLHA was never paid as previously agreed.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for an amount

in excess of $200,000 plus any such other relief this Court deems equitable and just.

## COUNT III
## (BREACH OF CONTRACT)

20. Plaintiff incorporates all prior paragraphs as if the same were set forth at length herein.

21. On January 14, 2000 when Defendant visited MLHA's gallery the parties reached an agreement as to the amount Defendant's agent would pay Plaintiff for the items at issue.

22. Defendant is in breach of this agreement as he has failed to cause the payment to be made to Plaintiff.

23. As a direct and proximate result of Defendant's breach, Plaintiff has sustained damages in excess of $200,000.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for an amount in excess of $200,000 plus any such other relief this Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims to which it is so entitled.

Respectfully submitted,

Dated: September 26, 2007.

Gavin P. Lentz

Gavin P. Lentz, Esq.
Todd S. McGarvey, Esq.
BOCHETTO & LENTZ, P.C.
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
(215) 735-2455 (fax)
glentz@bochettoandlentz.com
tmcgarvey@bochettoandlentz.com

4

*Timer* — 21,500    wts

PKT           10,500    wts

49 — 6"       16,500    wts

49  5"        13,500    wts

49  4"        11,500    wts

Com            6,800    wts

60 *feet*      8,250    wts

49 1.00   750    5.00    wts

*Per line*   17.5 λ       93,750    9400

           + 55 λ

*Feb*              24 yrs  39

*Mar*                    39

*April*                  39

*May 30. 2000*           39

                         39

49 — — 60 602    —    5.00

1860  *Flutter* 3572     8250

EXHIBIT

A

Blumberg No. 5119

Total value #103,000

1    Box of Winchester Cart. (44)

1    Pennpacker American Flint Rifle
        with Silver inlays

1    Cased pair of Belgian Smith pistols
        in Sequential numbers

1    Frank Elliot Bowie Knife

1    Powder horn

1    Kermit Roosevelt's Rifle
        Bolt Action Springfield Armoury Rifle

1    Single Action Colt ____ Wells Fargo

1    Richards Conversion 44 Calibers Revolver
        12 notch    7500 —    (5,200)

1    Buffalo Bill & Sitting Bull Photograph mounted

1    Colt Art Model 132637 —    (5,500)
        10,000

    Colt Single Action Nickel plated    No. 18162
        12,500    7,500

    Colt new 44 experimental ivory grips, engraved

EXHIBIT "B"

# BOCHETTO & LENTZ

A PROFESSIONAL CORPORATION

GEORGE BOCHETTO†*
GAVIN P. LENTZ*
JEFFREY W. OGREN*
STEPHEN E. SKOVRON*
DAVID P. HEIM*
VINCENT van LAAR*
SCOTT P. SIGMAN*
TODD S. McGARVEY*
———
DAVID J. PERLMAN*
*OF COUNSEL*
———
CORA J. O'DONNELL, J.D.
TRICIA DESMARAIS
RYAN CORCORAN
LYNNE T. NUCCI, CEBS
MARIA TROUT
*PARALEGALS*

PRACTICE DEDICATED TO LITIGATION MATTERS

ATTORNEYS AT LAW
1524 LOCUST STREET
PHILADELPHIA, PA 19102
————
TELEPHONE: (215) 735-3900
TELECOPIER: (215) 735-2455
————
FIRM WEB SITE:
bochettoandlentz.com

NEW JERSEY OFFICE
———
1230 BRACE ROAD
CHERRY HILL, NEW JERSEY 08034
TELEPHONE NUMBERS:
(856) 722-9595
(856) 427-0631
TELECOPIER: (856) 722-5511
———

* ALSO ADMITTED TO NEW JERSEY BAR
† ALSO ADMITTED TO NEW YORK BAR
* ALSO ADMITTED TO D.C. BAR

**May 16, 2007**

**Via Overnight Mail**
William Eby
3481 Augusta Drive
Ijamsville, MD 21754-9040

Re:    **Return of Items**

Dear Mr. Eby:

I represent Martin Lane. We hereby make a demand for the return of all "trade items" you removed from his gallery without payment. (Attached hereto is a list of those items). We are making this demand under New York law, because no payment was ever tendered to Mr. Lane's gallery for these items despite promises to the contrary. Hence, these are unlawfully in your possession and must be returned.

Pursuant to *Jackson Inc. v. ABC Corp.* 745 82nd 322 (2001); *Rogers v. Conde,* 67 App.Div. 130, 74 N.Y.S. 390 [1901] and *Guggenheim Found v. Lubell,* 153 A.D.2d 143, 145, 550 N.Y.S.2d 618 [1990], *affd.* 77 N.Y.2d 311, 567 N.Y.S.2d 623, 569 N.E.2d 426 [1991], my client is entitled to the return of these items due to non-payment and the absence of a bill of sale establishing title. This constitutes our formal demand that you return these items. If you fail to forward a letter stating your agreement that you will return these items, we will institute replevin action in the District Court of New York. The suit will seek a return of the items which were never paid for as well as counsel fees.

We need to receive your response to this letter within 14 days from the date of this letter or we shall proceed to prepare the Federal Court lawsuit.

**BOCHETTO & LENTZ, P.C.**

William Eby
May 16, 2007
Page 2


Thank you for your attention to this matter.

Very truly yours,

**BOCHETTO & LENTZ, P.C.**

Gavin P. Lentz, Esquire

GPL/jr
Encl.

# EXHIBIT "C"

# EXHIBIT 'A'

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MARTIN LANE HISTORIC AMERICANA,

                       Plaintiff,

        -against-

WILLIAM EBY,

                    Defendant.

-------------------------------------------------------------------X

Case No.:07-CV-8496

HON. JUDGE STEIN

**AFFIDAVIT OF**
**WILLIAM EBY**

STATE OF MARYLAND     )
                       ) SS:
COUNTY OF FREDERICK    )

I, WILLIAM EBY, being duly sworn, depose and say:

1. I am the Defendant in the above-captioned action. As such, I am fully familiar with the facts and circumstances heretofore had herein.

2. This Affidavit is respectfully submitted in support of the within motion seeking an Order pursuant to Rule 12(b)(6) and Rule 11 of the Federal Rules of Civil Procedure dismissing the Plaintiff's Complaint, imposing sanctions on the Plaintiff and his attorney and for such other and further relief as this court deems just and proper.

3. The pertinent facts of this case are as follows: On December 28, 1997, I entered into a consignment agreement with Larry Wilson (hereinafter "Wilson"), a dealer in antique firearms. Pursuant to said agreement, a copy of which is annexed hereto as Exhibit "A," Wilson was to sell a Colt Texas or Holster Model Paterson revolver, belonging to myself, for an agreed upon price of five-hundred thousand ($500,000.00) dollars.

4. Wilson did successfully procure the sale of my Colt firearm for a price of five-hundred thousand ($500,000.00) dollars. However, as of November 23, 1999, one-hundred ninety-two thousand ($192,000.00) dollars of the purchase price had still not been remitted to

me. Accordingly, I filed a lawsuit against Wilson in the United States District Court, District of Connecticut, to recover the outstanding balance and obtained a judgment for the sum demanded.

5. In late December of 1999, Mr. Wilson offered to satisfy the judgment by providing me with an assortment of antique firearms, which were located at the Plaintiff, Martin Lane's (hereinafter "Lane") New York City gallery.

6. Thereafter, on the morning of January 14, 2000, both Wilson and I drove to Lane's New York gallery, where the three of us earmarked a collection of firearms, a written inventory of which is annexed hereto as Exhibit "B". At this meeting, Wilson and Lane gave me the items listed in Exhibit "B" and executed a signed agreement, a copy of which is annexed hereto as Exhibit "C," wherein all parties acknowledged that ownership of the aforementioned inventory of firearms was being transferred to me in satisfaction of a judgment and debt due and owing. It is these firearms that are the subject matter of the current litigation.

8. Subsequently, on March 31, 2000, Lane again acknowledged me as being the owner of the subject firearms when he executed a consignment agreement, a copy of which is annexed hereto as Exhibit "D," in an attempt to sell some of the items listed in Exhibit "B" on my behalf. Unable to secure a buyer, on July 27, 2007, Lane returned the consigned firearms to me. It is important to note that the firearms listed in the January 14, 2000 inventory are some of the same firearms listed in Exhibit "D," the consignment agreement.

9. The Plaintiff's Complaint, a copy of which is annexed hereto as Exhibit "E", alleges, breach of contract and unjust enrichment and seeks replevin of the collection of firearms, ownership of which was transferred to me on January 14, 2000.

10. As more fully discussed in the accompanying Memorandum of Law, Plaintiff's Complaint must be dismissed in its entirety on grounds that all claims asserted therein are barred

by the applicable statutes of limitations, and Plaintiff cannot otherwise prove any facts in support of his claims such that would entitle him to relief.

11. Also, as more fully discussed in the accompanying Memorandum of Law, Plaintiff's claims are frivolous and exemplify the type of dishonest business transactions in which the Plaintiff has been involved in the past. See article annexed hereto as Exhibit "F".

**WHEREFORE**, it is respectfully requested that this Court grant the within application in its entirety, and dismiss the Plaintiff's Complaint against the Defendant, William Eby, with prejudice, and for such other and further relief as this Court deems just and proper.

_____
**William Eby**

Sworn to before me this
_16_ day of _Nov_____, 2007

_____
Notary Public

My Commission Expires
8-15-2011

- 3 -

*R.L. Wilson*

**Castle View**
**103-4 Ferry Road, Route 148**
**Hadlyme, Connecticut 06439**
**Tel: (860) 526-9297**
**Fax: (860) 526-9514**

**Telegraph Hill Tower**
**1730 Kearny Street, G-1**
**San Francisco, California 94133**
**Tel: (415) 835-5999   Fax: 5998**

Historical Consultant
Colt's Manufacturing Co., Hartford
and to
'The Art of American Arms'
and
'Buffalo Bill's Wild West'
Museum Loan Exhibitions
'Son of a Gun' - BBC-TV
'Colt Firearms Legends' - SONY
'The Guns That Tamed the West' - A & E
'The Story of the Gun' - A & E
'The Gun Industry in America' - BBC-TV/Open University
'Buffalo Bill's Wild West' - Riva Productions
Chairman, Antique Arms Committee
U.S. Society of Arms and Armour/America Remembers
The Guns of Manhattan (1999)

Samuel Colt Presents
The Arms Collection of Colonel Colt
L.D. Nimschke Firearms Engraver
The Evolution of the Colt
The Rampant Colt
Colt Commemorative Firearms
Theodore Roosevelt Outdoorsman
The Book of Colt Firearms
The Book of Winchester Engraving
Antique Arms Annual
Colt Pistols (with R.E. Hable)
Paterson Colt Pistol Variations (with P.R. Phillips)
The Colt Heritage
The "Russian" Colts
Colt Engraving
Rare and Historic Firearms (Christie's)
Winchester 1 of 1000
Colt's Dates of Manufacture
The Deringer in America, 2 Volumes (with L.D. Eberhart)
Colt An American Legend
Rare Firearms - A Benefit Auction (Christie's)
Winchester An American Legend
The Peacemakers
Steel Canvas
Ruger & His Guns
The Colt Engraving Book
The Official Price Guide to Gun Collecting

*From    Connecticut    address*

December  28th  1997

Wm. T. Eby
7506 Hopkins  Avenue
College  Park, Maryland  20740
(301)  927-2181

Dear  Mr. Eby:

This document is a receipt for the following item, left on consignment from yourself to me this date, for a period of up to approximately 120 days, on the basis as spelled out below:

Colt Texas or Holster Model Paterson revolver, serial no. 141, with 9-inch barrel (with customary *Colts Pt. Patent Arms Mfg. Co., Paterson, N.J.* barrel address marking and German silver band inlays, as also on recoil shield; oval escutcheon motif inlaid on backstrap; stagecoach holdup scene on roll-engraved cylinder); in overall excellent condition, blued, with case-hardened hammer and varnished select walnut grips; with

accessories of a mahogany case (lined in brown velvet; breakage to lock and missing brass and steel lock mechanism), combination powder and ball flask (marked with inscription legend as on revolver barrel, around center band, and with serial no. 16), combination screwdriver/nipplewrench/loading lever/nipple pricker, walnut-handled bullet mold, cleaning rod with turned walnut handle, extra cylinder (square-backed, and marked with serial no. 110, and with roll-engraved cylinder scene), Paterson capper (large size for revolving rifle, marked no. 40), and nipple wrench (with faceted wooden handle, made for engaging Paterson four-pronged nipples), and extra Paterson-style trigger (marked no. 391).

Consigned for sale at 13% commission to seller from gross sale price; minimum gross price of $500,000, of which approx. $150,000 to $200,000 value to be trade of a Texas or Holster Model Paterson revolver in very good condition (7 1/2-inch barrel, with visible cylinder scene). It is understood that a better price than the above would warrant a better commission figure. The decision to sell at the final price is at the disgression of the seller.

R.L. Wilson

Dec. 28.1997

N.B.~
Was Amended
to 150,000

# EXHIBIT 'B'

1    Box of Winchester Cart. (44)

1    Pennpacker American flint Rifle
     with Silver inlays

1    Cased pair of Belgian Smith pistols
     in Sequential Numbers

1    Franty Elliot Bowie Knife

1    Powder horn

(JW)  1   Hermit Roosevelt's Rifle
          Bolt Action Springfield Armoury Rifle

(RW)  1   Single Action Colt _____ Well's Fargo  !!

1  ✓  Richards Conversion 44 Cal ber Revolver ()
       12 notch   ___ 7500 —   5,200 —6   NEW NUMBERS ..

1     Buffalo Bill & Sitting Bull Photograph mounted

1  ✓  Colt Art. Model 132637 — 5,500
       10,000                                    ML 000283

1  ✓  Colt Single Action   Nickel plate  No. 18162
       12,500                7,500  ?

1     Colt Navy 44 experimental  Ivory grips, engraved
       No. 14321
1  ✓  25,000         12,900         William F Ely  1/14/00

Timer. — 21,500   wt⁵        ③

PKT           10,500   wt⁵

49 — 6"       16,500   wt⁵

49 5"         13,500   wt⁵.

49 4"         11,500   wt⁵

Core          6,800   wt⁵  Willer T&Ly

60 fluted     8,250   wt⁵

49           7,500    5,000   wt⁵

Per line    + 17.5K           93,750    ⟨9400⟩

Jeb         + 5.5K        24 April    3g

Mar                                  3g

April                               3g

May 30, 2007                        3g

                                    13g

49 — — 60602    —    5,000

1860 fluted 3572       8,250

New Numbers

ML 000277

# EXHIBIT 'C'

1/18/2003

This Receipt in consideration
goods (antique firearms) and other
valuables within day has received
from a Mr. Martin Larry of the Larry Wilson
hereby promise to apply towards
monies owed

Signed

_[signature]_

_[signature]_
Wilson

# EXHIBIT 'D'

*Martin F. Lane*

~~FIVE WEST HOUSTON STREET~~

an Consignment from
mr Bill Eby          3·31·2000

① Letter on 1860 Army Metallic Cart.
~~Engraved w/~~ Factory Ivory's
SN # 114721. Colt.
No Commission on Sale
( 120 days Open Consignment )
$ ~~xxxxxx~~ 25,000.00

② Cased Pair 1855 Nickle Plated
#1 Smith + Wesson Army's
120 day Consignment.
$ 10,000.00

Taken in By [signature]
3-31-2000 [signature]

Returned to
MR. EBY.
7.27·2000
in person          [signature] 7/27/00

**ML 000281**

EXHIBIT "E"

JUD... ...SUBPOENA

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern    District of    New York

Martin Lane Historic Americana

V.                          **SUMMONS IN A CIVIL ACTION**

William Eby

CASE NUMBER:

**07 CIV 8496**

TO: (Name and address of Defendant)

William Eby
3481 Augusta Drive
Ijamsville, MD 21754-9040

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Gavin P. Lentz, Esquire
BOCHETTO & LENTZ, P.C.
1524 Locust Street
Philadelphia, PA 19102

an answer to the complaint which is served on you with this summons within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**J. MICHAEL McMAHON**                    OCT 0 1 2007

CLERK

By) DEPUTY CLERK                    DATE

JS 44C/SDNY
REV. 12/2005

**JUDGE STEIN**

CIVIL COVER SHEET

**07 CIV 8496**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of
pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the
Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of
initiating the civil docket sheet.

**PLAINTIFFS**
Martin Lane Historic Americana
205 West Houston Street
New York, NY 10014

**DEFENDANTS**
William Eby
3481 Augusta Drive
Ijamsville, MD 21754-9040

**ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER**
Gavin P. Lentz, Esquire
1524 Locust Street, Philadelphia, PA 19102

**ATTORNEYS (IF KNOWN)**

**CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)**

DIVERSITY OF CITIZENSHIP          28 U.S.C § 1332

Has this or a similar case been previously filed in SDNY at any time? No ☐ Yes? ☐

If yes, was this case Vol ☐ Invol. ☐ Dismissed. No ☐ Yes ☐   If yes, give date _____ Judge Previously Assigned _____ & Case No. _____

(PLACE AN [x] IN ONE BOX ONLY)                    NATURE OF SUIT

OCT 01 2007

| CONTRACT | TORTS | | FORFEITURE/PENALTY | ACTIONS UNDER STATUTES |
|---|---|---|---|---|
| [ ] 110 INSURANCE | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 AGRICULTURE | **BANKRUPTCY** |
| [ ] 120 MARINE | [ ] 310 AIRPLANE | [ ] 362 PERSONAL INJURY - | [ ] 620 FOOD & DRUG | [ ] 422 APPEAL |
| [ ] 130 MILLER ACT | [ ] 315 AIRPLANE PRODUCT | MED MALPRACTICE | [ ] 625 DRUG RELATED | 28 USC 158 |
| [ ] 140 NEGOTIABLE | LIABILITY | [ ] 365 PERSONAL INJURY | SEIZURE OF | [ ] 423 WITHDRAWAL |
| INSTRUMENT | [ ] 320 ASSAULT, LIBEL & | PRODUCT LIABILITY | PROPERTY | 28 USC 157 |
| [ ] 150 RECOVERY OF | SLANDER | [ ] 368 ASBESTOS PERSONAL | [ ] 630 LIQUOR LAWS | |
| OVERPAYMENT & | [ ] 330 FEDERAL | INJURY PRODUCT | [ ] 640 R R & TRUCK | **PROPERTY RIGHTS** |
| ENFORCEMENT OF | EMPLOYERS' | LIABILITY | [ ] 650 AIRLINE REGS | [ ] 820 COPYRIGHTS |
| JUDGMENT | LIABILITY | | [ ] 660 OCCUPATIONAL | [ ] 830 PATENT |
| [ ] 151 MEDICARE ACT | [ ] 340 MARINE | **PERSONAL PROPERTY** | SAFETY/HEALTH | [ ] 840 TRADEMARK |
| [ ] 152 RECOVERY OF | [ ] 345 MARINE PRODUCT | [ ] 370 OTHER FRAUD | [ ] 690 OTHER | |
| DEFAULTED | LIABILITY | [ ] 371 TRUTH IN LENDING | | **SOCIAL SECURITY** |
| STUDENT LOANS | [ ] 350 MOTOR VEHICLE | [ ] 380 OTHER PERSONAL | **LABOR** | [ ] 861 HIA (1395ff) |
| (EXCL VETERANS) | [ ] 355 MOTOR VEHICLE | PROPERTY DAMAGE | [ ] 710 FAIR LABOR | [ ] 862 BLACK LUNG (923) |
| [ ] 153 RECOVERY OF | PRODUCT LIABILITY | [ ] 385 PROPERTY DAMAGE | STANDARDS ACT | [ ] 863 DIWC (405(g)) |
| OVERPAYMENT OF | [ ] 360 OTHER PERSONAL | PRODUCT LIABILITY | [ ] 720 LABOR/MGMT | [ ] 863 DIWW (405(g)) |
| VETERANS BENEFITS | INJURY | | RELATIONS | [ ] 864 SSID TITLE XVI |
| [X] 160 STOCKHOLDERS SUITS | | | [ ] 730 LABOR/MGMT | [ ] 865 RSI (405(g)) |
| [ ] 190 OTHER CONTRACT | | | REPORTING & | |
| [ ] 195 CONTRACT PRODUCT | | | DISCLOSURE ACT | **FEDERAL TAX SUITS** |
| LIABILITY | | | [ ] 740 RAILWAY LABOR ACT | [ ] 870 TAXES |
| [ ] 196 FRANCHISE | | | [ ] 790 OTHER LABOR | [ ] 871 IRS-THIRD PARTY |
| | | | LITIGATION | 26 USC 7609 |
| **REAL PROPERTY** | **ACTIONS UNDER STATUTES** | | [ ] 791 EMPL RET INC | |
| | **CIVIL RIGHTS** | **PRISONER PETITIONS** | SECURITY ACT | |
| [ ] 210 LAND CONDEMNATION | [ ] 441 VOTING | [ ] 510 MOTIONS TO | | |
| [ ] 220 FORECLOSURE | [ ] 442 EMPLOYMENT | VACATE SENTENCE | | |
| [ ] 230 RENT LEASE & | [ ] 443 HOUSING | 28 USC 2255 | | |
| EJECTMENT | ACCOMMODATIONS | [ ] 530 HABEAS CORPUS | | |
| [ ] 240 TORTS TO LAND | [ ] 444 WELFARE | [ ] 535 DEATH PENALTY | | |
| [ ] 245 TORT PRODUCT | [ ] 445 AMERICANS WITH | [ ] 540 MANDAMUS & OTHER | | |
| LIABILITY | DISABILITIES - | [ ] 550 CIVIL RIGHTS | | |
| [ ] 290 ALL OTHER | EMPLOYMENT | [ ] 555 PRISON CONDITION | | |
| REAL PROPERTY | [ ] 446 AMERICANS WITH | | | |
| | DISABILITIES -OTHER | | | |
| | [ ] 440 OTHER CIVIL RIGHTS | | | |

**OTHER STATUTES**
[ ] 400 STATE REAPPORTIONMENT
[ ] 410 ANTITRUST
[ ] 430 BANKS & BANKING
[ ] 450 COMMERCE/ICC RATES/ETC
[ ] 460 DEPORTATION
[ ] 470 RACKETEER INFLU ENCED & CORRUPT ORGANIZATION ACT (RICO)
[ ] 480 CONSUMER CREDIT
[ ] 490 CABLE/SATELLITE TV
[ ] 810 SELECTIVE SERVICE
[ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE
[ ] 875 CUSTOMER CHALLENGE 12 USC 3410
[ ] 891 AGRICULTURE ACTS
[ ] 892 ECONOMIC STABILIZATION ACT
[ ] 893 ENVIRONMENTAL MATTERS
[ ] 894 ENERGY ALLOCATION ACT
[ ] 895 FREEDOM OF INFORMATION ACT
[ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE
[ ] 950 CONSTITUTIONALITY OF STATE STATUTES
[ ] 890 OTHER STATUTORY ACTIONS

Check if demanded in complaint:

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $ _in excess of_ 280,000   OTHER

Check YES only if demanded in complaint
JURY DEMAND: ☒ YES ☐ NO

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

JUDGE _____

DOCKET NUMBER _____

NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

JUDGE STEIN IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

07 CV 8496

| | |
|---|---|
| MARTIN LANE HISTORIC AMERICANA<br>205 West Houston Street<br>New York, New York 10014, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| vs. | ) |
| | ) |
| WILLIAM EBY,<br>3481 Augusta Drive<br>Ijamsville, Maryland 21754-9040, | ) JURY TRIAL DEMANDED |
| | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

COMES NOW, Plaintiff Martin Lane Historic Americana ("MLHA"), by and through undersigned counsel, and for its Complaint against Defendant William Eby ("Mr. Eby") alleges as follows:

### I.  JURISDICTION AND VENUE

1. This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1332 as the amount in controversy far exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391 as a substantial part of the events or omissions giving rise to these claims occurred in this district.

### II.  THE PARTIES

3. Plaintiff Martin Lane Historic Americana ("MLHA") is a New York corporation engaged in the collection and resale of rare antique firearms and other collectible artifacts doing business at its gallery located at 205 West Houston Street, New York, New York 10014.

1

retained items.

## COUNT I
## (REPLEVIN)

14. Plaintiff incorporates all prior paragraphs as if the same were set forth at length herein.

15. MLHA's possessory right to the aforementioned items is superior to that of Mr. Eby as they were never paid for as promised. MLHA is entitled to immediate possession of those items. *Jamison Business Sys.'s, Inc. v. Unique Software Support Corp.*, No. CV 02-4887 (ETB), 2005 WL 1262095, at *14 (E.D.N.Y. May 26, 2005).

16. MLHA has made repeated demand for return of the items but Mr. Eby continues to refuse to return the items despite MLHA's superior rights. *Id.*

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for an amount in excess of $200,000 plus any such other relief this Court deems equitable and just.

## COUNT II
## (UNJUST ENRICHMENT)

17. Plaintiff incorporates all prior paragraphs as if the same were set forth at length herein.

18. By continuing to retain the items that belong to Plaintiff and to which Plaintiff has a superior possessory right, Defendant is being enriched at Plaintiff's expense.

19. Equity and good conscience militate against permitting Defendant to retain the items that are unlawfully in his possession as MLHA was never paid as previously agreed.

WHEREFORE, Plaintiff demands judgment in its favor and against Defendant for an amount in excess of $200,000 plus any such other relief this Court deems equitable and just.

3

*Shiner* — 21,500 wt?

PKT          10,500 wt?

49 — 6"      16,500 wt?

49 5"        13,500 wt?

49 4"        11,500 wt8

Con          6,800

60 feet      8250

_____        5,000    wt?

_____  17.50    93,350    (9900)

_____  5.50    2upe  39

_____          39

2pcs          39

may 30. 2000      39

_____          39

49 — — 60602 —    500

160 Fixed 3572    8250

**EXHIBIT**
**A**

EXHIBIT "F"


**The Orange Savings Account**
ING DIRECT
Save Your Money
Open Now
**4.20%** APY   No Fees. No Minimums.
Member FDIC



Search:   Forbes.com   Quotes   Video   Web   Blogs   Advanced

U.S.   EUROPE   ASIA      HOME PAGE FOR THE WORLD'S BUSINESS LEADERS      Free Trial Issue

**ENTREPRENEURS**
- Raise Capital
- Market Your Business
- Harness Technology

E-mail | Print | Comments | Request Reprints | E-Mail Newsletters | 🗐 My Yahoo! | RSS

The 2007 Collectors Guide
# Smoking Gun
David Armstrong 12.25.06



**The king of the antique firearms business, Larry Wilson, sits in prison. Is he a con artist--or did he just shoot himself in the foot?**

To his defenders, Robert L. (Larry) Wilson is the most prominent expert in collectible antique firearms, a scholar who pops up in the middle of almost every major transaction in the gun trade. "He's the king," says his friend, sometime business partner and New York antique dealer Martin Lane. "His research single-handedly made this hobby what it is. This stuff wouldn't be worth nearly what it is if it weren't for Wilson."

To his detractors Wilson is a con man, snookering the collecting elite and part-time hobbyist alike, artificially pumping up the value of old guns and working with a network of conniving dealers who profit off the inflated values. Sometimes, his accusers say, he simply steals guns outright. "At best, he's been abusive of his position; at worst, a total crook," says Jim Gordon, who serves on the board of the Buffalo Bill Historical Center in Cody, Wyo.

Whatever the case, Wilson, 67, sits in a federal penitentiary in Lompoc, Calif. He is serving a 12-month-and-one-day sentence after pleading guilty last year to cheating a California seller out of a $500,000 1840 Colt Paterson revolver that once belonged to the son of French King Louis-Philippe. He'll be released three days after Christmas; in March he will head to a juried trial in Louisville, Ky. to face criminal charges in a separate case, where he could get an additional 11 years. In an eight-page letter from prison, Wilson says he's innocent of all new charges, the victim of an overzealous attorney, jealous dealers and "wannabe" scholars who

Hot Spots

The Artful Billionaire

Hey That's Mine

Patently Obvious

**Complete Contents**

**By This Author**

David Armstrong

Booked Up

From Player to Creator, Online

**More Headlines**

**RSS News Feed** 🔊

News by E-mail
Get stories by E-Mail on this topic FREE

**Companies**
☐ Wells Fargo

Become a member FREE
Already a Member? Log In

Enter Username
Enter E-Mail Address
Select Your Title
Receive Special Offers? ☑

FAQ | Privacy Policy
Terms, Conditions and Notices

Also available:
E-Mail Newsletters

📶 Find Free Wi-Fi Hotspots

**Magazine Archives**

Looking for a *Forbes* magazine article? Search here.

[Search]

**Trading Center**

A little knowledg is a powerful thir

**Alerts!**
Be notified about payment due dates a low balances so you help prevent fees.

Know More Now


Bank of America

magazine archives powered by mywir

resent his success and influence in the gun trade. "After my unprecedented contributions to the study of arms, to arms collecting," he writes, "my treatment ... is disgraceful."

Indeed, Wilson has had both success and influence. For more than four decades he has written more extensively about historical firearms in the U.S. than anyone else, producing 42 books, including the definitive history of Colt firearms and an exhaustive guide to Colt serial numbers and manufacturing dates, the bible for dealers and collectors. He's written many catalog essays and articles, has sat on the boards of the nation's major antique gun museums--and has been kicked off at least one. He has also been the go-to guy in documentaries on gun history for the Discovery, A&E and History channels. For collectors his acknowledgment of a gun's provenance and value was widely considered the last word. "For years I was educated by Larry. He knew everyone, all over the world," says New York financier Donald Zilkha, who bought Colt's Manufacturing Co. in 1994.

The son and grandson of Presbyterian ministers from Minnesota, Wilson developed a passion for antique guns matched only by a carefully cultivated image of the gentleman adventurer. His Hadlyme, Conn. home was filled with curiosities: a full-size replica **Wells Fargo** (nyse: WFC - news - people ) stagecoach in the middle of the living room, an 1893 roulette table and built-in vaults that held his own collection of rare firearms, and a vast trove of books. A stuffed boar and lion inhabited the place, along with hyena and baboon skulls, trophies from the nine expeditions Wilson made to Africa, accompanied by the likes of former Treasury Secretary William Simon and wealthy art dealer Alec Wildenstein. Wilson regularly attended, and participated in, the Mille Miglia, once driving a rare 1947 Cisitalia in the annual recreation of the famed Italian cross-country race from Brescia to Rome. "He was trapped in a society that he tried to keep up with, the world of the rich and famous, and he couldn't do it," says John Malloy, a collector who has known Wilson for at least 30 years.

To many who know him, Wilson is no crook, just a befuddled scholar--a freelance appraiser and author with little business acumen who got in over his head financially even as gun owners, relying on his expertise and connections, trusted him to act as a middleman in their deals. They say Wilson never really recovered after sinking as much as $500,000 into *In the Blood*, a feature-length movie in 1989, shot in Africa, re-creating Theodore Roosevelt's 1909–10 hunting expedition. Directed by *Pumping Iron* auteur George Butler, the film got good reviews--but no audience.

The deal that landed him in jail is vintage Wilson. In 1999 the owner of the Colt Paterson, a gun that once belonged to the Duke of Orléans, entrusted Wilson to find a buyer, for $500,000 in cash. Soon after, Wilson sold the gun through Lane to another collector for $250,000 and a handful of lesser-valued guns but repeatedly told the seller that he needed more time to close the deal, according to a lawsuit filed by Antiques & Arts Trading Consultants, the seller. The suit claims Wilson used the money to repay debts he owed Lane and others--including William Eby, with whom Wilson also had an earlier agreement to sell a different $500,000 Colt pistol--and to fund Wilson's "extravagant lifestyle." Wilson declared bankruptcy in January 2001. The seller later won a nondischargeable $750,000 claim against Wilson, the sum of what's due with interest and other fees, though it has received only $50,000.

Last year, Wilson says, the lawyers hounding him for the money got the U.S. district attorney in Connecticut involved, and Wilson--believing he wouldn't serve any time in jail, say people close to him--pleaded guilty to one count of wire fraud in connection with the case. In his letter Wilson admits there is "partial payment due" on the deal but says the federal case was pushed by the seller's lawyer in an attempt to use the federal government "as their bill collector."

In the wake of his bankruptcy Wilson's Connecticut home was auctioned off for $1 million. Other gun sellers turned up with similar stories about being stiffed--with more than $800,000 owed to Lane for previous deals;

Brought to you by the sponsor





ForbesAutos.com



CEO Book Club

BOOK REVIEW
Robert Lenzner



BOOK REVIEW
It's Value Time
Robert Lenzner
With the Dow over 12,000, value investi-
back. *The Little Book of Value Investing*
shows you how to take advantage.

Search Books


Title

Advanced Search

New & Notable




$250,000 to auction house Bonhams & Butterfields; $400,000 to a gun seller in Akron, Ohio; and $50,000 to a doctor in South Dakota. Joseph Imbrognio of Mechanicsburg, Pa. claims he engaged Wilson in 1999 or 2000 to sell a $40,000 Colt Walker that had been in his fiancée's family for 80 years, a gun believed to have been with the famed Texas Ranger, Samuel Walker, in Mexico. He never saw the gun (or the money) again." "I tell everyone who will listen that Wilson is a thief," he says.




Special Advertising


Wine Club

The National Cowboy & Western Heritage Museum in Oklahoma City in 2000 gave Wilson 100 guns to sell. After his bankruptcy, only 37 were accounted for. Still the museum's curator Richard Rattenbury defends Wilson: "The situation with us was disappointing, but there's no doubt he's always been honest with me."

Suspicions about Wilson first surfaced in the late 1970s and early 1980s when he was working as a pro bono adviser to the Colt Firearms Collection at the Museum of Connecticut History. Wilson arranged a series of five trades with the museum, including one in which he swapped a double-barreled Colt rifle that he bought for $15,000 to the museum for nine other guns, six of which he soon sold for $44,000. In another trade Wilson gave seven guns worth $43,000 to the museum in return for 16 guns he would later value at $84,000.

After an 18-month investigation, then state attorney general Joseph Lieberman filed a report to Connecticut governor William O'Neill in 1988. Given the wide-ranging values by different appraisers of items moving in and out of the museum, Lieberman could not prove that a crime had been committed. Wilson says his profits were the result of "dumb luck" and "a typical markup" over the years since he owned the guns. Current museum president Dean Nelson tracked the guns in later deals and is convinced Wilson profited handsomely. In 2004, he says, the fbi in Louisville, Ky. asked for those records.

None of this, apparently, was known to Owsley Brown Frazier when he started to build a vast gun collection in 1997. The 71-year-old former vice chairman of Brown-Forman, makers of Jack Daniel's whiskey, among other brands, turned first to Michael Salisbury, a relative unknown in gun collecting circles who had met Frazier through a mutual friend. For the next five years Salisbury, acting on Frazier's behalf, bought hundreds of guns, including 19th-century Colts and Winchesters. In late 2000 Salisbury tapped Wilson to appraise the budding collection. Wilson flew to Louisville, met Frazier and was quickly brought into the fold. Frazier had 46 guns at the time, and Wilson signed off on a $5.5 million appraisal, almost twice what Frazier had paid.

By the middle of 2001 Frazier was committed to the idea of building a gun museum and charged Salisbury with building a "world class" collection. Court documents say Salisbury bought more than 400 guns in 16 months. Meanwhile, Wilson made many trips to Louisville to advise on acquisitions and plans for the museum. He introduced Frazier to the head of the British Royal Armories—the U.K. museum dedicated to arms and armor; now, thanks to Wilson, the third floor of Frazier's museum contains the Royal Armories' only U.S. outpost. He persuaded Frazier to spend $300,000 to support research on a history of women and firearms, *Silk and Steel* (Random House, 2003).

**Page: 1 2 Next >**

**More On This Topic**

Companies: WFC
E-Mail Newsletters: Sign Up Now To Stay Informed On A Range Of Topics
Attaché: Customize Forbes.com Now To Track This Author And Industry

**Article Controls**

E-mail | Print | Comments | Request Reprints | E-Mail Newsletters | ⊞ My Yahoo! | RSS

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK  )

               : ss.:

COUNTY OF NASSAU  )

       I, KARLEEN TISCHLER, being duly sworn, states as follows: I am employed in the County of Nassau, State of New York by Arnold L. Kert PLLC.  I am over 18 years of age and not a party to the action.  My business address  is 666 Old Country Road, Garden City, New York 11530.

       On November 19, 2007 I served the following documents:

NOTICE OF MOTION PURSUANT TO RULE 12 (B)(6) AND RULE 11 OF THE FRCP
TO DISMISS PLAINTIFF'S COMPLAINT

by depositing a true copy thereof enclosed in a post-paid wrapper, in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State, addressed to:

               Gavin P. Lentz, Esq.
               Bochetto & Lentz, P.C.
               1524 Locust Street
               Philadelphia, PA 19102

                        *Karleen Tischler*

                        KARLEEN TISCHLER

Sworn to before me this
19th   day of November, 2007.

*Sandra R. Cohen*

Notary Public

             SANDRA R. COHEN
          Notary Public, State of New York
            ~ No. 52-4505353
            Qualified in Suffolk County
         Commission Expires May 31, 20 11

Case 1:07-cv-08496-DCF    Document 8    Filed 11/19/2007    Page 40 of 40

Case No.:  07-CV-8496

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARTIN LANE HISTORIC AMERICANA,

Plaintiffs,

-against-

WILLIAM EBY

Defendants,

NOTICE OF MOTION

ARNOLD L. KERT PLLC
ATTORNEY AT LAW
ATTORNEYS FOR DEFENDANT
666 OLD COUNTRY ROAD, SUITE 301
GARDEN CITY, NEW YORK 11530
TEL: (516) 222-1860 - FAX: (516) 222-1713

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.*
Dated:                                          Signature:
                                                Print Signer's Name: ARNOLD L. KERT

*Service of a copy of the within                                 is hereby admitted*
Dated:
                                                Attorney(s) for

PLEASE TAKE NOTICE
Notice of Entry
        (  )        that the within is a certified copy of a                entered in the office of
                the clerk of the within named Court on
Notice of Settlement
        (  )        that an Order of which the within is a true copy will be presented for
                settlement to the Hon.                one of the judges of the within
                named Court, at
                on                        20        at

Dated:                                          ARNOLD L. KERT PLLC
                                                666 OLD COUNTRY ROAD
                                                GARDEN CITY, NEW YORK 11530
                                                Tel: (516) 222-1860

# EXHIBIT "D"

## AFFIDAVIT OF WILLIAM EBY

STATE OF MARYLAND    )
                     ) ss:
COUNTY OF *Anne Arundel* )

WILLIAM EBY, being duly sworn, hereby states as follows:

1. I am over the age of eighteen and believe in the obligation of an oath.

2. According to details recounted to me by my father, my grandfather purchased a cased Texas Paterson (the "Paterson") serial number 141, from Francis Bannerman prior to World War I.

3. In 1997, I decided to sell the Texas Paterson to raise money for my children's education. After efforts to sell the Paterson on my own, I was put in touch with R. L. Wilson ("Wilson"). I consigned the Paterson to Wilson pursuant to a written agreement. The minimum price Wilson was to obtain for the Paterson was $500,000. If Wilson realized a greater than $500,000 value he was contractually obliged to pay me the difference minus his commission.

4. As part of my deal with Wilson, he was to obtain for me an ordinary Paterson in good condition. Wilson delayed producing this piece for some time but, after I pressured him to comply, he provided me with one to which he initially ascribed a value of $200,000. I believed this value to be over-stated so Wilson conceded to settle the value of this piece at $150,000. I recently learned that this piece was purchased by well-known dealer, Michael Zomber at auction at Butterfield's for $88,000 including commission. Moreover, the piece provided to me by Wilson was originally part of a cased set which had been broken up for auction. I have recently been advised that this piece's present value is no more than $90,000-$125,000.

5. Wilson also made various cash payments and provided trade pieces to me from time to time which amounted to a combined value of $93,000. Allowing Wilson a 15% commission against the purported $500,000 sales price, I was still owed $192,000. Despite my demands for payment, Wilson refused to pay the balance owing to me. In August 1999, I commenced a lawsuit against Wilson in Federal

District Court in Connecticut to recover the sum owed to me.

6. For several months following the commencement of the lawsuit Wilson continued to tell me he would satisfy his debt to me by providing me with trade pieces. On January 14, 2000, I drove from my home to Wilson's home in Hadlyme, CT to view some trade items. I selected a few items, but they were not of great value. After I pressed him to come up with more (and more valuable) trade pieces, he suggested we drive to a gallery owned by Martin Lane in New York City. He told me Lane had other pieces I could take in trade for settlement of Wilson's debt to me.

7. When we arrived at Lane's gallery, although there were some items of significant value displayed, none of these items were offered as consideration for settlement of my dispute with Wilson. Consequently, I selected several pieces from amongst other displayed items available in the gallery and sat down with Lane to negotiate the values to be ascribed to each. I felt the values Lane placed on the pieces were inflated, but I accepted them because I did not know if I would ever get anything else from Wilson to satisfy my claim. At Lane's and Wilson's request, I wrote, dated and signed a list of the items I received that day. The pieces I received that day included the following: one 1869 Thuer Navy Conversion Cased with all accessories; one 1871 open top Army Size Colt .44 Stetson; one 1849 Thuer 5" Pocket; and one 1873 Conversion Colt .cal 38 Nickel.

8. As I was leaving, Wilson said he was pressed for time because he had to go to the airport to pick up a very rare Colt. When I asked him what rare colt, Wilson said he was collecting a Colt Paterson.

9. I first attempted to sell the trade items provided by Wilson and Lane. Unable to sell them, I wound up trading them in turn for items valued at approximately 25%-35% of the value ascribed to them by Lane.

_____
William Eby

Sworn to and subscribed before me
this /8th day of May 2001

_____

My commission expires 11/3/03

**EXHIBIT "E"**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **MARTIN LANE HISTORIC AMERICANA,** | ) ) ) | |
| Plaintiff, | ) ) | No. 07-cv-8496 |
| vs. | ) ) | Hon. Judge Stein |
| **WILLIAM EBY,** | ) ) ) | **AFFIDAVIT OF MARTIN LANE** |
| Defendant. | ) | |

I, Martin Lane, being duly sworn, depose and say as follows:

1.       As noted in the Complaint, I am the owner and proprietor of Martin Lane Historic Americana (MLHA) who is the Plaintiff in the above-captioned matter.

2.       I have read the Affidavit of William Eby dated November 16, 2007 and the accompanying exhibits and his affidavit contains a number of false statements.

3.       I have personal knowledge of the facts contained within this affidavit.

4.       At no time have I ever considered Mr. Eby to be the lawful owner of the firearms and other valuables that he took from the premises of MLHA on January 14, 2000 as the consideration for the firearms that was promised was never tendered.

5.       Mr. Wilson brought Mr. Eby to my museum where they reviewed certain artifacts to determine which ones they wanted.  At the time these items were taken, I fully expected to receive compensation from Mr. Wilson.  I relied on the national reputation of Mr. Wilson who Mr. Eby promised would make payment to me.  Indeed, one of the main reasons a list was prepared was to assign values to the firearms so I knew what was due and owing me.  In hindsight, I wish I had demanded payment or return of the items by a date certain.

1

6.     Furthermore, the document which Mr. Eby attaches to his affidavit as "Exhibit C" does not contain my signature. He states this document constitutes an acknowledgment by me that "the aforementioned inventory of firearms was being transferred" to him. I have never seen this document before it was forwarded to me by my attorney a week ago and I certainly disagree with the significance that Mr. Eby assigns to it.

7.     On January 14, 2000, the time when Mr. Eby took the firearms from the premises of MLHA, Mr. Wilson was not known to me as the "dishonest" man that Mr. Eby makes him out to be and I had no reason to suspect I would not be paid or, if not, that the items would not be returned. At that time, Wilson was considered the foremost expert in collectible antique firearms and I fully expected that MLHA and myself would be fairly compensated by Mr. Wilson. If Wilson failed to honor this payment promise, then I certainly expected Mr. Eby to either return or pay for the items; he has done neither. Mr. Wilson had written many nationally published books and was on staff at some of the largest museums in the world. (See copy of Mr. Wilson's letterhead which is "Exhibit A" to Mr. Eby's Affidavit.)

8.     Moreover, while I acknowledge the existence of the March 31, 2000 consignment receipt that Mr. Eby has attached to his affidavit, this receipt was in no way intended to be an acknowledgment that Mr. Eby is "the owner of the subject firearms" as Mr. Eby states. Rather, this receipt merely reflects efforts I made on Mr. Eby's behalf to sell two of the firearms he had taken from MLHA about three months prior. If I had been successful in selling those firearms, either Mr. Wilson or Mr. Eby would have been obligated to remit that money to me.

9.     Just as I expected payment from Mr. Wilson on Eby's behalf at times after January 14, 2000, I continued to expect payment from either or both of them on March 31, 2000 and indeed continue to expect either payment or return of the items taken. At present,

lawful title to the guns has never passed to Mr. Eby as the promised consideration was never paid. Before filing this lawsuit, I made a demand for return of the firearms and reminded Mr. Eby that I had never been paid for these items. He refused to return the items, leaving me with no choice but to file this lawsuit.

I hereby declare under penalty of perjury as prescribed in 28 U.S.C. § 1746 that the statements contained in the foregoing Affidavit are true and correct to the best of my knowledge, information and belief.

_____
Martin Lane

Sworn to before me this
_27TH_ day of _November_____, 2007

_____, esquire.
Notary Public

3